IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Phyllis Gaither Montague, on behalf of Herself and all others similarly situated, | C/A No.: 3:09-687-JFA |
| Plaintiff, | |
| vs. | |
| Dixie National Life Insurance Company; National Foundation Life Insurance Company; USHealth Group, Inc.; and Scott Richardson, in his official capacity as Director of the South Carolina Department of Insurance, | **ORDER** |
| Defendants. | |

Through this action, an insured seeks to challenge the manner in which benefits were paid pursuant to the "actual charges" provision of a disease-specific supplemental insurance policy. Currently before the court is the motion for summary judgment of defendants National Foundation Life Insurance Company and Dixie National Life Insurance Company (collectively, the "Insurance Companies") against plaintiff Phyllis Gaither Montague ("Montague"). (Dkt. No. 48.) The motion has been fully briefed and the parties presented oral argument to the court at a June 7, 2010 hearing. This order serves to announce the ruling of the court.

I.  Background

This is the latest in the continuing saga over an insured's entitlement to the contractually undefined term "actual charges." Identical to the claim in Ward v. Dixie Nat'l

Life Ins. Co., 257 Fed. App'x 620, 625 (4th Cir. 2007) (Ward I), Montague claims that the Insurance Companies failed to pay benefits in the manner provided by her supplemental insurance policy (the "Policy"). Specifically, Montague contends that the Policy requires the Insurance Companies to determine benefits by looking to the amount initially billed by the healthcare provider as opposed to the amount accepted by the provider from the payor. In policies identical to the one at issue, the Fourth Circuit has found the term "actual charges" ambiguous and construed the term in favor of the insureds to mean the initial amount billed by the provider. Ward I, 257 Fed. App'x at 625.

On June 4, 2008, S.C. Code Ann. § 38-71-242 (Supp. 2009) became law and defined "actual charges," where not otherwise defined in a specified disease insurance policy, as the amount accepted by the healthcare provider from the payor "pursuant to a network or other agreement with a health insurer, third-party administrator, or other third-party payor" or "government administered health care program." In Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164 (4th Cir. 2010) (Ward II), the Fourth Circuit found that section 38-71-242 did not apply retroactively and that the statute went into effect on June 4, 2008.

Montague obtained coverage under the Policy with the Insurance Companies prior to June 4, 2008, but filed claims after that date. In handling Montague's claim, the Insurance Companies determined "actual charges" benefits pursuant to the statutory definition found in section 38-71-242, rather than according to the Fourth Circuit's decision in Ward I. Montague filed suit in the Court of Common Pleas for Richland County, South Carolina,

2

against the Insurance Companies and the South Carolina Director of Insurance alleging breach of contract and seeking declaratory and injunctive relief. The case was thereafter removed to federal court on the basis of federal question jurisdiction, as the complaint alleges violation of the Contracts Clause of the United States Constitution.

II.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted). A fact is material if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue is genuine if the evidence offered is such that a reasonable jury might return a verdict for the nonmovant. Id. at 257. In cases where the parties dispute material facts, "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995). Moreover, the court "may not make credibility determinations or weigh the evidence." Williams v. Staples,

Inc., 372 F.3d 662, 667 (4th Cir. 2004). The motion before the court turns solely on a point of law, the parties do not dispute any material facts.

III. Discussion

The Insurance Companies contend that when Montague renewed her Policy on June 26, 2008, she entered into a new policy that incorporated the statutory definition of "actual charges" provided in section 38-71-242 that went into effect on June 4, 2008. Their position is that because they paid her claims pursuant to section 38-71-242, they have fulfilled their end of the bargain under the Policy. Montague contends that her monthly renewal of the Policy does not effect the creation of a new policy, that the Policy has been in effect since March 26, 1992, and that the South Carolina legislature's attempt to rewrite the Policy through statute violates the Contracts Clause of the South Carolina and United States Constitutions.

1. The Contracts Clause

The Contracts Clause states that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. The United State Supreme Court has devised a tripartite analysis to determine whether the Contracts Clause has been violated. The first prong, and only prong relevant to the instant motion for summary judgment, is the directive requiring "a court [to] ask whether there has been an impairment of a contract." Catawba Indian Tribe of S.C. v. City of Rock Hill, 501 F.3d 368, 371 (4th Cir. 2007). Determining impairment, however, presupposes an existing contract capable of impairment.

4

Texaco, Inc. v. Short, 454 U.S. 516, 531 (1982) ("The statute cannot be said to impair a contract that did not exist at the time of its enactment."). The Insurance Companies contend that because the Policy became a new contract on June 26, 2008 and absorbed the definition of actual charges found in section 38-71-242 upon renewal, the Contracts Clause is inapplicable. The question thus becomes whether Montague entered into a single insurance policy in 1992 for an indefinite term, or whether she entered into a new insurance policy on the 26th of each month for sixteen years.

  2. One Continuous Contract or Many Successive Contracts?

Courts examining whether "a new contract arose upon the payment and acceptance of each renewal premium" look to "the intention of the parties as expressed in the writing." Hudson v. Reserve Life Ins. Co., 141 S.E.2d 926, 927 (S.C. 1965). In Hudson, the South Carolina Supreme Court found that policy terms setting forth "agreed premiums, dates when premiums are due, [and] default in payment and reinstatement" are inconsistent with "the view that the policy terminated on each premium paying date or within fifteen days thereafter." Id. at 928. Other South Carolina Supreme Court cases have discussed similar considerations in distinguishing between continuous and successive contracts. See Chastain v. United Ins. Co., 96 S.E.2d 464 (S.C. 1967); Hodge v. Nat'l Fid. Ins. Co., 68 S.E.2d 636 (S.C. 1952). In finding the contract at issue in Chastain constituted a fixed-term contract, the court reasoned:

> The policy in question is for a definite and fixed term. It can correctly be denominated a term policy. It could not be renewed or continued without the

5

consent of both parties. When the insurer refused to consent to a renewal of the contract, it was acting within the reserved rights under the policy.

Id. at 467. In Hodge, the court saw fit to make similar distinctions when considering whether a life insurance policy was in force at the time of an insured's death. As stated in Hodge:

> In determining whether the policy under consideration was renewed, we must keep in mind the character of insurance involved. We are not here dealing with a policy which is an indivisible and continuous contract for insurance for life or a stated number of years, subject to forfeiture for non-payment of premiums, nor are we dealing with a health or accident policy which is non-cancellable . . . . The policy here is for a definite and fixed term. It is clearly a species of term insurance. No grace period is provided. It could not be renewed or continued without the consent of both parties; that is, a new contract had to be made. The rights of the parties were mutual in the sense that neither was bound to renew the contract.

68 S.E.2d at 639. Reading Chastain, Hodge, and Hudson together, the South Carolina Supreme Court, in ascertaining the intent of the parties with respect to payment of renewal premiums, looks to (1) whether the policy is for a definite term; (2) the presence or absence of a grace period; (3) the presence and necessity of mutual consent to continue the policy; and (4) whether the contract is subject to forfeiture only for non-payment of premiums.

The Policy provides that the benefits guaranteed by its provisions cannot change while it remains in force and that an insured has the right "to continue this policy during [her] lifetime by timely payment of the required premium." In so providing, the Insurance Companies deprived themselves of the ability to withdraw consent. Such a provision obviates the question of mutual consent upon renewal because the contract may continue in force, with benefits unaltered, at the pleasure of Montague. The Policy does not have a

6

defined or fixed term. In this sense, offer issued and acceptance was solicited and obtained only at the execution of the Policy, and immaterial thereafter. Accordingly, the Policy provision guaranteeing Montague the right to continue "this policy" during her lifetime strongly suggests the parties envisioned and intended a single continuous contract rather than successive independent contracts. Additional evidence of the parties' mutual intent to form a continuous single contract may be found throughout the Policy, as detailed below.

The Policy provides that after two years the Insurance Companies promise to pay benefits regardless of when cancer was first diagnosed or treated, and that the Policy is incontestable after that time. The Policy also states that coverage does not begin for 30 days after it is executed. Provisions defining lifetime maximums, or the lack thereof, appear frequently throughout the Policy. For example, under paragraph (L) of the Policy, the hospice care benefit is explicitly limited to a lifetime maximum of 180 days. The court finds these provisions incompatible with a policy term of thirty days and that the intent of the parties as manifested by the Policy language reflects an intent to form a "continuous contract of insurance for life subject to forfeiture for nonpayment of premiums." Chastain, 96 S.E.2d at 468–69. However, the question remains as to whether the ability of the Insurance Companies to change the premium mandates that the court consider each renewal a new contract.

3. Is the Adjustable Premium Provision Dispositive Pursuant to Webb?

The Insurance Companies insist that regardless of the foregoing, the fact that the

7

Policy provides for an adjustable premium compels the finding that the parties entered into a new contract on the 26th of each month. To support their assertion, the Insurance Companies place near total reliance on Webb v. South Carolina Ins. Co., 407 S.E.2d 635 (S.C. 1991). Webb holds that renewal of a fixed-term automobile insurance policy constitutes a new contract requiring a valid offer of UIM. Id. Webb also recognized an exception to this general rule where (1) "the expiring policy mandates the same terms shall remain in effect and (2) the terms of the policy do not change upon renewal." Id. In finding that the renewal at issue did not come within the exception, the Webb court found "it dispositive [that the policy] specifically contemplate[d] upon renewal a renegotiation of an essential term of the contract, the premium rate." 407 S.E.2d 635. On that basis, the Insurance Companies contend that when Montague paid her premium in June 2008, she renegotiated the Policy because the Insurance Companies had the option of raising the premium on all policies with the same form number.

However, Webb's characterization of the effect of the renewal must be viewed in context. Allstate Ins. Co. v. Thatcher, 325 S.E.2d 59, 61 (1985) ("In one sense of the word, the renewal of any contract creates a new contract. Except for the renewal, the contract would be dead."). Webb dealt solely with "the extent of an exception to the rule that renewal constitutes a new contract." 407 S.E.2d at 636. The rule to which Webb refers was announced in Knight. Id. And Knight specifically couched its rule in terms of "the renewal of a policy of insurance for a fixed term." 374 S.E.2d 520, 522. The court reads Webb's

8

requirement of an "expiring policy" as implicit recognition of its limited application to insurance contracts of fixed duration—contracts which expire by their own terms.

Here, because the Policy continues in effect at the pleasure of Montague, it is continuous and does not expire. Accordingly, the general rule regarding renewal of fixed-term contracts as announced in Allstate and Knight is inapplicable, and the Webb exception to the general rule doubly so.

IV.  Conclusion

At bottom, Hudson's charge to ascertain the intent of the parties compels the court to deny the Insurance Companies' motion for summary judgment (Dkt. No. 48) because the premium payments on or after the effective date of section 38-71-242 did not constitute the formation of new contracts. The court requests the parties to appear at the roster meeting previously noticed (Dkt. No. 55) for June 16, 2010 at 3:00 p.m., where the court will conduct a status conference.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

June 11, 2010                                              Joseph F. Anderson, Jr.
Columbia, South Carolina                                   United States District Judge